UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20478-CIV-ALTONAGA/O'Sullivan

**JAMES W. DAVIDSON**,

    Plaintiff,
vs.

**CAPITAL ONE, N.A.**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Capital One, N.A.'s ("Capital One['s]") Motion to Dismiss [ECF No. 36] and Memorandum of Law . . . ("Motion") [ECF No. 36-1], filed May 9, 2014.  Plaintiff, James W. Davidson ("Davidson"), submitted his Memorandum of Law Opposing Defendant's Motion to Dismiss Second Amended Complaint ("Response") [ECF No. 42], entered on the docket June 24, 2014.  Capital One filed its Reply . . . ("Reply") [ECF No. 43] on July 7, 2014.  The Court has carefully considered the parties' written submissions and applicable law.

### I. BACKGROUND

**A.  Procedural Background**

In December 2013, Davidson filed a Complaint ("Complaint") [ECF No. 1-2] in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  On February 6, 2014, Capital One removed the Complaint to this Court (*see* [ECF No. 1]) and thereafter filed a Motion to Dismiss . . . ("First Motion to Dismiss") [ECF No. 5].  The Court granted the First Motion to Dismiss by default (*see* [ECF No. 9]), and Davidson thereafter filed

an Amended Complaint [ECF No. 16]. Capital One filed a Motion to Dismiss ("Second Motion to Dismiss") [ECF No. 22], and while Davidson filed an opposition (*see* [ECF No. 27]), he also sought leave to file a second amended complaint (*see* [ECF Nos. 25 and 26]). The Court granted the Second Motion to Dismiss, dismissed the Amended Complaint without prejudice, and gave Davidson additional time to file a second amended complaint. (*See* [ECF No. 31]). Davidson filed his Second Amended Complaint ("SAC") [ECF No. 32] on April 18, 2014.

### B. Factual Summary[1]

This matter arises out of a note and mortgage executed by Davidson and his wife, Deborah C. Davidson. (*See* SAC ¶ 4). The mortgage was at some point assigned to Capital One (*see id.* ¶ 5) and in 2010, Capital One claimed Davidson had failed to maintain insurance it said was required by the mortgage (*see id.* ¶ 8). It bought insurance on his behalf, and partially refunded Davidson after he provided proof insurance had been purchased. (*See id.*). In total, it charged Davidson $11,365.97 for approximately three months of insurance payments. (*See id.*). Davidson sought explanations from Capital One about the insurance it had allegedly bought and why the premiums were so costly; Capital One sought repayment of the premiums, wrongfully debited and converted Davidson's funds (later crediting the money back to him), and intentionally misapplied normal monthly mortgage payments to pay insurance premiums. (*See id.*). In 2011 and 2012, Davidson paid "each normal monthly mortgage loan payment due upon the Mortgage consisting of interest then due and/or principal then due and/or insurance escrow contribution then due." (*Id.* ¶ 7).

Capital One "improperly applied funds received by it from [Davidson] . . . to either reimburse itself for insurance advancements purportedly made . . . and/or to cover a purported

---

[1] The allegations of the SAC are taken as true.

negative escrow balance in the escrow account associated with the Mortgage caused by the charge of the exorbitant $11,365.97 for premiums for insurance." (*Id.* ¶ 9 (alterations added)). Capital One knew its conduct was wrong because the mortgage document states proceeds are to be applied first to interest due, then to principal due, and only after to reimbursement "for insurance advancements or to pay escrow items or to cover negative escrow account balances . . . ." (*Id.* ¶ 10; *see also id.* ¶¶ 12–13). This resulted in an "artificial default" of the normal mortgage payments due under the mortgage. (*See id.* ¶ 11).

Capital One then falsely reported to credit reporting agencies ("CRAs") including Equifax Credit Information, TransUnion, and Experian, that Davidson was late in paying, or had not paid, his normal monthly mortgage payments. (*See id.* ¶ 16). It also sought to foreclose on the mortgaged property and wrongfully declared a default, accelerated all outstanding sums under the mortgage and note, and maintained the foreclosure suit "under false pretenses including claiming an artificial 'default' existed in normal monthly payments." (*Id.* ¶ 17). The foreclosure lawsuit gave Capital One "unwarranted and improper economic and other coercive power over" Davidson, and Capital One "improperly extracted funds" from him before it dismissed the foreclosure lawsuit. (*Id.* ¶ 18).

Starting in 2011, Davidson asked Capital One to fix or withdraw the credit reporting inaccuracies, but it did not. (*See id.* ¶ 21). The false information damaged Davidson's reputation and creditworthiness, and Capital One initially made the disclosures without informing others Davidson had disputed the report (*see id.* ¶ 22), constituting malice on its part (*see id.* ¶ 23). Capital One acted knowingly, intentionally, and recklessly, or alternatively was so reckless and grossly negligent that it consciously disregarded and was totally indifferent to the rights of Davidson. (*See id.* ¶ 25).

The SAC contains thirty-seven causes of action: thirty-four counts alleging common law credit slander, each of which relates to a separate month Capital One allegedly wrongfully reported adverse information to CRAs about Davidson (Counts I–XXXIV); a count alleging violation of the Florida Consumer Collection Practices Act ("FCCPA"), Florida Statute sections 559.72 and 559.77 (Count XXXV); a count alleging common law abuse of process (Count XXXVI); and a count alleging violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681s-2 (Count XXXVII). (*See generally* SAC). In addition to damages, Davidson requests declaratory and injunctive relief. (*See id.* 45–47).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in

the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### III. ANALYSIS

Capital One seeks dismissal of all counts of the SAC. (*See generally* Mot.). It argues Davidson's thirty-four counts alleging credit slander are preempted by the FCRA and the FCRA's exception for actions based on false information furnished with malice or willful intent is inapplicable in the present litigation. (*See id.* 5–10). It asserts the FCCPA claims warrant dismissal because they are either preempted by the FCRA or barred because they are not based on debt-collection activity and are precluded by Florida's litigation privilege. (*See id.* 10–12). Capital One seeks dismissal of the abuse of process claim because of the litigation privilege; because Davidson does not allege any facts showing the process was used for a purpose besides the one for which it was designed; and because a foreclosure complaint with purportedly false allegations does not constitute abuse of process. (*See id.* 12–14). Finally, according to Capital One, the FCRA claim fails because Davidson's own allegations show he was in default on the mortgage, and thus Capital One's reports to CRAs were correct. (*See id.* 14–16).

#### A. Credit Slander — Counts I–XXXIV

Davidson alleges Capital One wrongly made false reports to the CRAs and failed to withdraw or correct its false reports; it thereby breached its duty of fair credit reporting and duty to correct previously made false reports. (*See, e.g.,* SAC ¶¶ 31–35). Relying on numerous court decisions, Capital One argues the credit slander claims are preempted by the FCRA and the FCRA's carve-out for malicious or willful actions is inapplicable to lenders such as itself.

"The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. Fed. Deposit Ins. Corp.*, 625 F.3d 808, 812 (4th Cir. 2010) (citing 15

U.S.C. § 1681(a)). "As part of the ongoing process of fine-tuning this statutory scheme, Congress . . . added a strong preemption provision, 15 U.S.C. [section] 1681t(b), to this comprehensive legislative framework. . . . The purpose of this new subsection was, in part, to avoid a patchwork system of conflicting regulations." *Id.* at 813 (alterations added; internal citations and quotation marks omitted).

> Pursuant to the FCRA:
>
> No requirement or prohibition may be imposed under the laws of any State . . . (1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except [for inapplicable exceptions] . . . .

15 U.S.C. § 1681t(b) (alterations added). In turn, section 1681s-2 applies to a "person"[2] under the following statutory provision: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3). Capital One falls under this provision, as Davidson disputed the accuracy of the information reported to CRAs and Davidson alleges Capital One did not notify the CRAs of the dispute. (*See* SAC ¶ 22). Thus, Davidson's credit slander claims under Florida law "run[] into the teeth of the FCRA preemption provision," because they "concern[] [Capital One's] reporting of inaccurate credit information to CRAs, an area regulated in great detail under [section] 1681s-2(a)–(b)." *Ross*, 625 F.3d at 813 (alterations added). This provision of the FCRA preempts Davidson's credit slander claims, a conclusion Davidson does not challenge in any substantive way. (*See generally* Resp.).

Nevertheless, Davidson argues the FCRA's carve-out for malicious or willful behavior

---

[2] "The term 'person' means any . . . corporation, . . . association, . . . or other entity." 15 U.S.C. § 1681a (alterations added).

defeats preemption.[3]  (*See id*. 7–12).  Pursuant to 15 U.S.C. section 1681h(e):

> [1] Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, [2] based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or [3] based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

*Id.* (alterations added).

Capital One "furnishes information to a consumer reporting agency," *id.*, but for the carve-out to apply, Davidson must meet one of the three conditions embodied in the statute. Davidson's credit slander claims do not fall under sections 1681n and 1681o because they are state law claims, not based on the FCRA. (*See generally* SAC).  Davidson's credit slander claims are not "based on information disclosed pursuant to section 1681g, 1681h, or 1681m" because these apply only to CRAs and users of consumer reports, and Capital One is not a CRA

---

[3] Capital One does not dispute section 1681h(e) applies in this litigation (*see generally* Mot., Reply), and therefore the Court assumes without deciding it does.  *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." (citations and internal quotation marks omitted)).  But the undersigned notes it is questionable the carve-out for malicious or willful behavior survives the 1996 amendment to the FCRA, which enacted a far broader preemption provision than that contained in section 1681h(e).  Indeed, two courts of appeals have held section 1681t(b) preemption takes precedence over that of section 1681h(e).  *See Purcell v. Bank of Am.*, 659 F.3d 622, 626 (7th Cir. 2011)  ("[U]sing [section] 1681h(e) to preserve state-law claims that come within the scope of [section] 1681s-2 would defeat the 1996 decision that administrative action rather than litigation is the right way to deal with false reports to credit agencies." (alterations added)); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011).  "[T]he newer clause more broadly preempts 'the laws of any State.'  In addition, the malice/willfulness requirement does not exist in the new statute." *Himmelstein v. Comcast of the Dist., L.L.C.*, 931 F. Supp. 2d 48, 57, 59 (D.D.C. 2013) (alteration added) (adopting interpretation in which "the new preemption provision preempts *all* related state-law causes of action against furnishers [of credit information], even willful violations of state common law" (emphasis in original; alteration added; citations omitted)).

and is "not a user of consumer reports vis-à-vis" Davidson. *Ross*, 625 F.3d at 814 (citation omitted). Likewise, the final statutory condition "does not appear to apply because [Capital One] neither used [Davidson's] consumer report nor took adverse action based on information in [Davidson's] report or information disclosed by a user." *Id.* (alterations added) (citing 15 U.S.C. § 1681h(e)); *see also Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1259–60 (M.D. Ala. 2007).

Davidson cites a number of decisions for the proposition allegations of malice or willful intent are sufficient to avoid FCRA preemption. (*See* Resp. 7–12). For example, in *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007, 1013 (S.D. Iowa 2003), the court held state law claims similar to Davidson's were not preempted by the FCRA. But the court in *Gordon* failed to undertake the detailed statutory analysis the court in *Ross* undertook; in fact, the court completely excised the three statutory conditions analyzed *supra* when it quoted section 1681h(e). *See id.* at 1012. Because the "starting point for all statutory interpretation is the language of the statute itself," *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) (citation omitted), *Gordon* is not persuasive. As there are no allegations in the SAC that would bring Capital One within the three statutorily provided exceptions for malicious or willful conduct, section "1681h(e), by its plain terms, is not implicated by the facts of this case . . . ." *Spencer v. Nat'l City Mortg.*, 831 F. Supp. 2d 1353, 1362 (N.D. Ga. 2011).

Finally, Davidson attempts to distinguish the holding of *Ross*, arguing the court affirmed a grant of summary judgment and dismissal is inappropriate before a factual record has been developed. (*See* Resp. 7). But *Ross* only relied on the factual record in its analysis of malice and willful intent — the second part of its inquiry — not in the first step of the analysis regarding the three statutory conditions in 1681h(e). *See Ross*, 625 F.3d at 814–15. The Court need not reach

the factual inquiry in the second step because — even accepting as true the allegations of malice and willful intent — it can decide the first step of the inquiry on the basis of the four corners of the SAC. As such, the FCRA preempts all of Davidson's credit slander claims, and Counts I–XXXIV are dismissed.

### B. FCCPA — Count XXXV

Davidson claims Capital One violated the FCCPA by making false reports to the CRAs; failing to correct previous false reports; failing to reveal the fact Davidson had disputed the reports; and maintaining "the bogus Foreclosure Lawsuit" against Davidson although he had made the correct monthly payments. (SAC ¶¶ 196–205; *see also* Resp. 13). Capital One argues the FCRA preempts the claims to the extent they are based on allegedly inaccurate credit reporting. (*See* Mot. 10–11). The Court has previously determined the FCRA preempts common law claims in Part III.A, *supra*, and FCCPA claims based on reports to CRAs are preempted under the FCRA for the same reasons. *See Osborne v. Vericrest Fin., Inc.*, No. 8:11-cv-716-T-30TBM, 2011 WL 1878227, at *2–3 (M.D. Fla. May 17, 2011).

Capital One further argues the FCCPA claim is barred to the extent it relies on the filing of the foreclosure lawsuit because Florida recognizes a litigation privilege. (*See* Mot. 11–12).

> The Supreme Court of Florida, addressing whether the litigation privilege applies to statutory causes of action, has stated, "[t]he litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin. 'Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding.'"

*Gaisser v. Portfolio Recovery Assocs., LLC*, 571 F. Supp. 2d 1273, 1279–80 (S.D. Fla. 2008) (alterations in original; citations omitted) (dismissing FCCPA claim based on filing of state suit).

In regard to the foreclosure lawsuit, Davidson alleges Capital One "commenced,

9

maintained[,] and refused to dismiss the [suit] . . . until it had extracted from [Davidson] more funds that [*sic*] it was entitled to" and it "falsely claimed in its verified Complaint . . . [Davidson] had not paid [his mortgage payments] during and after July 2011 . . . ." (SAC ¶¶ 201–02 (alterations added)). The filing and maintenance of a lawsuit is plainly protected by Florida's litigation privilege, and the fact Davidson alleges the foreclosure suit was meritless because it contained false allegations is not relevant to the inquiry. *See Perez v. Bureaus Inv. Grp. No. II, LLC*, No. 1:09-CV-20784, 2009 WL 1973476, at *3 (S.D. Fla. July 8, 2009) (dismissing FCCPA claim based on allegation defendant filed debt-collection lawsuit "after the applicable statute of limitations had lapsed"). Davidson does not even attempt to distinguish the authority upon which Capital One relies. (*See* Resp. 12–16). Count XXXV is barred by the litigation privilege and is dismissed.[4]

### C. Abuse of Process — Count XXXVI

Davidson states a common law claim for abuse of process based on Capital One's filing of the foreclosure lawsuit and its alleged "wrongful ulterior motive or purpose in commencing and maintaining" the suit "under . . . false pretenses . . . ." (SAC ¶ 210 (alteration added)). Capital One again asserts the litigation privilege applies and, even if it does not, Davidson "does not allege any facts showing that Capital One used the foreclosure process for a purpose other than foreclosing on" his property. (Mot. 13). While the latter ground may well have merit, the Court can dispose of the abuse of process claim on, and limits its discussion to, the former ground.

The litigation privilege bars an abuse of process claim based on acts that "occurred during

---

[4] The FCCPA claim is also properly dismissed because "filing a foreclosure lawsuit is not a debt collection practice under [section] 559.72 of the FCCPA." *Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007) (alteration added).

and were related to the judicial proceedings . . . ." *LatAm Invs., LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 242 (Fla. 3d DCA 2011) (citation omitted). While the privilege would seem to entirely displace the tort, "a claimant may still pursue a claim for an abuse of process when the claim is based on actions taken outside of a judicial proceeding or on actions that are taken during a judicial proceeding but which are unrelated to the judicial proceeding." *Id.* at 243 (citations omitted). Davidson's allegations, however, are related solely to conduct that occurred during the foreclosure suit and were related to that suit. (*See* SAC ¶¶ 17–25, 208–11). Thus, the litigation privilege applies to Count XXXVI, and the claim is properly dismissed.

### D. FCRA — Count XXXVII

Finally, Davidson brings a count based on a violation of 15 U.S.C. section 1681s-2(b) for Capital One's failure to remedy its allegedly false reports to the CRAs after the CRAs notified Capital One that Davidson had disputed the information. (*See* SAC ¶¶ 212–22).[5] Capital One argues Davidson's admission he did not repay the premiums of insurance bought on his behalf precludes his claim as a matter of law. (*See* Mot. 14–16). Capital One's sole case law support for this proposition is *Stroud v. Bank of America*, 886 F. Supp. 2d 1308 (S.D. Fla. 2012), in which the court granted summary judgment in favor of defendants on an FCRA claim.

Pursuant to section 1681s-2(b), after a CRA notifies a furnisher of credit information such as Capital One a customer has disputed an item on his or her credit report, the furnisher must

> "conduct an investigation with respect to the disputed information[]" and "review all relevant information provided" to it by the CRA. 15 U.S.C. § 1681s-2(b)(1). Regardless of the results of its investigation, the Bank must report back to any CRA that notified it of the dispute. 15 U.S.C. § 1681s-2(b)(1)(C). . . . Finally, if the investigation is either inconclusive or results in a finding that the Bank

---

[5] While Count XXXVII is also based on an alleged violation of section 1681s-2(a) (*see* SAC ¶ 220), "the statute explicitly bars private suits for violations of this provision." *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009) (citing 15 U.S.C. § 1681s–2(c); 15 U.S.C. § 1681s(c)(1)(B)) (parenthetical omitted).

>provided incomplete or inaccurate information to the CRA, then the Bank [must], "for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the investigation promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information." 15 U.S.C. § 1681s-2(b)(1)(E). The Bank must complete its investigations, reviews and reports within the 30-day period after the consumer notifies the CRA of the dispute. 15 U.S.C. § 1681s-2(b)(2).

*Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1257 (S.D. Fla. 2009) (alterations added; footnote call number omitted).

Davidson properly alleges he disputed the information with the CRAs (*see* SAC ¶ 216); the CRAs informed Capital One (*see id.* ¶ 217); and Capital One "failed to conduct an investigation or a reasonable investigation into such matters . . ." (*id.*). (*See also* Resp. 18). For purposes of deciding the Motion, the Court accepts as true these allegations, which are not controverted elsewhere in the SAC. (*See generally* SAC). Therefore, Count XXXVII states a cause of action upon which relief can be granted.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Capital One's Motion **[ECF No. 36]** is **GRANTED in part** and **DENIED in part**. Counts I–XXXVI of the SAC **[ECF No. 32]** are **DISMISSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of July, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record