UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

CASE NO.: 14-20478-CIV-ALTONAGA/O'Sullivan

JAMES W. DAVIDSON,

    Plaintiff,

vs.

CAPITAL ONE, N.A.,

    Defendant.

_____  /

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW**

Defendant, Capital One, N.A., as successor in interest by merger to Chevy Chase Bank, FSB ("Capital One"), by its attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this Memorandum of Law in support of its Motion for Summary Judgment and states as follows:

**INTRODUCTION**

This Fair Credit Reporting Act lawsuit results from Plaintiff's refusal to pay Capital One the full amount of the monthly payments due on his mortgage loan during 2011 and 2012. At the time, Plaintiff objected to an increase in his monthly payments that Capital One imposed to recover funds that Capital One advanced to purchase lender-placed wind insurance. Plaintiff concedes that Capital One had the right to purchase the insurance and to obtain reimbursement for the insurance premium. However, he claims -- incorrectly -- that Capital One did not have the right to increase his monthly payment to recover the premium, and that Capital One should not have reported his account as delinquent to the credit reporting agencies after he refused to make the increased payments.

The material facts are undisputed. As shown below, Capital One is entitled to judgment as a matter of law because Plaintiff cannot show that Capital One's credit reporting about his loan was inaccurate. To the contrary, it is undisputed that (1) Plaintiff failed to maintain wind insurance on his property in 2010; (2) Capital One paid $11,365 to purchase windstorm insurance for Plaintiff's property; (3) Capital One sought reimbursement for the funds it advanced through an increase in Plaintiff's monthly payments; and (4) Plaintiff refused to pay Capital One the increased monthly payments. As a result, Capital One's adverse reporting to the credit bureaus was entirely accurate. Therefore, Plaintiff's claim under the FCRA fails as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

1.   On October 31, 2003, Plaintiff received a $720,000.00 mortgage loan (the "Loan") from Chevy Chase Bank, F.S.B. ("Chevy Chase"). Excerpts from Deposition of James Davidson, attached hereto as Exhibit 1, pp. 12-13; 25-28; Second Amended Complaint, ¶ 4.

2.   In exchange for the Loan, Plaintiff granted Chevy Chase a mortgage (the "Mortgage") secured by his residence located at 6395 S. Mitchell Manor Circle, Pinecrest, Florida 33156 (the "Property"). Exhibit 1, pp. 12-13; 25-28; Mortgage dated October 31, 2003, attached hereto as Exhibit 2; Second Amended Complaint, ¶ 4.

3.   Thereafter, Capital One merged with Chevy Chase, and became the lender with respect to the Mortgage. Declaration of Alan Baxter, attached hereto as Exhibit 3, ¶ 8; Second Amended Complaint, ¶ 5.

4.   Pursuant to the terms of the Mortgage, Plaintiff was required to maintain hazard insurance on the Property in the type and the amount required by the lender. See Mortgage,

Exhibit 2, ¶ 5. Plaintiff testified at his deposition that he understood this requirement when he received the Loan. Exhibit 1, p. 28.

5. The Mortgage also provides that, in the event Plaintiff fails to maintain the type and amount of insurance coverage required by the lender, the lender is authorized to purchase insurance and charge the borrower for the cost of the insurance. Mortgage, Exhibit 2, ¶ 5. Plaintiff testified at his deposition that he also understood this when he received the Loan. Exhibit 1, p. 28.

6. Pursuant to ¶ 5 of the Mortgage, any amounts paid by the lender to purchase such insurance "become additional debt of borrower" secured by the Mortgage and bear interest at the same rate as the Loan. Mortgage, Exhibit 2, ¶ 5.

7. Further, Plaintiff agreed in the Mortgage to pay, upon demand, any amounts advanced by the lender for the purchase of hazard insurance. Mortgage, Exhibit 2, ¶ 5.

8. When Plaintiff received the Loan in 2003, he chose not to have an escrow account established with the lender for the payment of taxes and insurance. Exhibit 1, pp. 34-35. Instead, he requested that Chevy Chase waive the escrow account and permit him to pay for his taxes and insurance directly. Id.

9. Accordingly, Plaintiff executed a document entitled "Waiver of Escrow," which required him to timely pay "any and all property taxes, assessments, leasehold payments, ground rents and hazard or property insurance premiums" and provide proof of payment to the lender upon request. See Waiver of Escrow, attached hereto as Exhibit 4; Exhibit 1, pp. 34-35.

10. The Waiver of Escrow further provided that the lender had the right to establish an escrow account in the event, inter alia, that Plaintiff failed to pay any escrow item in a timely

manner, or if it became necessary for the lender "to advance funds to pay all or any portion of the" escrow items, including insurance. Exhibit 4.

11. On or about March 11, 2010, Capital One notified Plaintiff in writing that he did not have wind storm coverage as required by Capital One, and requested that Plaintiff purchase such insurance and provide proof of wind coverage. Exhibit 1, pp. 39-40; Letter dated March 11, 2010, attached hereto as Exhibit 5; Second Amended Complaint, ¶ 8.

12. Capital One sent two additional written notices to Plaintiff about his failure to have wind insurance on March 24, 2010 and March 25, 2010. Exhibit 1, pp. 46-48; Letter dated March 24, 2010, attached hereto as Exhibit 6; letter dated March 25, 2010, attached hereto as Exhibit 7.

13. After Plaintiff failed to provide evidence that he had obtained wind insurance, Capital One purchased wind coverage on or about May 28, 2010 and charged Plaintiff's Mortgage account $37,023 for the annual premium. Exhibit 3, ¶ 10; Letter dated May 28, 2010; attached hereto as Exhibit 8; Second Amended Complaint, ¶ 8.

14. Because Capital One had advanced $37,023 for wind insurance on Plaintiff's Property, Capital One established an escrow account with respect to Plaintiff's Loan so that it could recover the premium it paid, and so that there would be sufficient funds in the account to purchase a new wind policy in 2011. Exhibit 3, ¶ 11.

15. On or about July 7, 2010, Capital One sent Plaintiff a mortgage statement, indicating that his account had been charged $37,023 for an annual premium for wind insurance. Exhibit 1, pp. 65-66; Exhibit 3, ¶ 12; Statement dated July 7, 2010, attached hereto as Exhibit 9.

16. A week later, on or about July 14, 2010, Capital One sent Plaintiff an "Escrow Account Disclosure Statement – Notice of Payment Change." Exhibit 1, pp. 67-71; Exhibit 3, ¶ 13; Escrow Account Disclosure Statement dated July 14, 2010, attached hereto as Exhibit 10.

17. The Escrow Account Disclosure Statement advised Plaintiff that he had a negative balance of $37,023 in his escrow account as a result of the wind insurance premium that Capital One advanced to purchase the insurance. Exhibit 10. The document also advised Plaintiff that his monthly payment would be increasing to $11,182 so that he would be reimbursing Capital One for the $37,023 annual premium over the next 12 months, as well as paying a monthly amount toward the purchase of a new wind policy in 2011. Id.

18. On or about July 2, 2010, Plaintiff finally provided proof to Capital One that he had procured his own wind insurance, effective June 28, 2010. Exhibit 1, pp. 57-60; Exhibit 3, ¶ 14.

19. As a result, Capital One notified Plaintiff that it had cancelled the wind insurance policy it had purchased for $37,023 and obtained a partial refund in the amount of $25,657. Exhibit 1, pp. 61-62; Exhibit 3, ¶ 15; Confirmation of Cancellation, attached hereto as Exhibit 11.

20. Because Plaintiff lacked wind coverage from the period from March, 2010 to June, 2010, however, Plaintiff still owed Capital One a total of $11,365 for three months of wind coverage Capital One had purchased. Exhibit 3, ¶ 16.

21. On December 28, 2010, Capital One sent Plaintiff a second "Escrow Account Disclosure Statement – Notice of Payment Change," notifying him that his escrow shortage was now reduced to $11,365, and that his monthly payment would be $4,159 so that he could reimburse Capital One for the $11,365 over 12 months. Exhibit 1, pp. 79-81; Exhibit 3, ¶ 16;

December 28, 2010 Escrow Account Disclosure Statement – Notice of Payment Change, attached hereto as Exhibit 12.

22. Over the next several months, Capital One sent monthly mortgage statements to Plaintiff, advising him that his monthly payment amount was $4,159 and requesting payment. Exhibit 1, pp. 80-82; 86-87.

23. Plaintiff refused to make the full $4,159 payments. Exhibit 1, pp. 80-82; 86-87. Instead, he paid only the interest due of $3,212. Id. Rather than pay the amount due according to the statement, Plaintiff crossed out that amount and wrote in the amount of $3,212 on the statement and sent Capital One a check in that amount. Exhibit 1, pp. 80-82; 86-87; 93-101; Mortgage Statements dated January 18, 2011, February 16, 2011, April 14, 2011, May 6, 2011, June 6, 2011, July 18, 2011, August 1, 2011 and August 16, 2011, attached collectively hereto as Exhibit 13.

24. The mortgage statements sent to Plaintiff from January to August, 2011, all clearly stated that Plaintiff was not paying the full amount he owed on the Loan. Id. Nevertheless, Plaintiff refused to pay the full amount, believing that he had no obligation to reimburse Capital One for the $11,365 that Capital One advanced for lender-placed insurance. Exhibit 1, pp. 80-82; 86-87; 93-101. Eventually, Capital One began reporting to the credit reporting agencies that the Loan was delinquent. Exhibit 3, ¶ 18.

25. In November, 2011, Capital One stopped accepting Plaintiff's partial payments of $3,212 and advised Plaintiff that it intended to initiate foreclosure proceedings if the Loan was not brought current. Exhibit 1, pp. 101-105; Letter dated October 24, 2011, attached hereto as Exhibit 14; Letter dated November 11, 2011, attached hereto as Exhibit 15; Letter dated

November 30, 2011, attached hereto as Exhibit 16; and Letter dated December 29, 2011, attached hereto as Exhibit 17.

26. Plaintiff still refused to pay the full amount due under the Loan, and ultimately a foreclosure was filed in December, 2011. Exhibit 1, pp. 102-05; Second Amended Complaint, Exhibit C.

27. On or about December 12, 2011, Plaintiff's counsel sent a letter to the law firm that filed the foreclosure action, disputing Capital One's right to foreclose and its right to recover the funds Capital One advanced to pay for the lender-placed insurance. Exhibit 1, pp. 103-104; Exhibit 18.

28. On or about February 10, 2012, Capital One sent Plaintiff's counsel a detailed letter, explaining that Capital One had conducted an investigation of Plaintiff's account and confirmed that Plaintiff's loan was in default for failure to pay the amounts advanced for lender-placed insurance. Exhibit 3, ¶ 19; Exhibit 19. The letter included a detailed explanation of the terms of the Mortgage that gave Capital One the right to reimbursement for the lender-placed insurance. Id.

29. Finally, in May, 2012, Plaintiff decided to bring the loan current, and paid $30,851 to reinstate the Loan. Exhibit 1, pp.114-116; Exhibit 20.

30. Thereafter, in 2013, Plaintiff began complaining to Capital One that his credit report showed that his mortgage account had been delinquent in 2011 and 2012. Exhibit 1, pp. 123-24; 133-34; Exhibit 21; Exhibit 22.

31. Capital One investigated Plaintiff's claims and responded that the account was correctly reported to the credit reporting agencies. Exhibit 3, ¶ 22; Exhibit 23; Exhibit 24.

32. In May, 2013, Plaintiff contends that he filed written disputes with the three major credit reporting agencies, disputing that he was delinquent on his Loan with Capital One in 2011 and 2012.  See Second Amended Complaint, Exhibit D.

33. In June, 2013, Capital One received electronic notices from two of the credit reporting agencies, Trans Union and Experian, that Plaintiff was disputing Capital One's credit reporting of his Loan account.  Declaration of Wes Bernard, attached hereto as Exhibit 25.

34. Because Plaintiff's Loan account was in fact delinquent from March 2011 to May, 2012, Capital One did not change its reporting concerning the account.  Id.

## LEGAL ARGUMENT

### I.  LEGAL STANDARDS

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Rule 56(c) of the Federal Rules of Civil Procedure; Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Abdullah v. Migoya, 955 F. Supp.2d 1300, 1304-05 (S.D.Fla. 2013).  Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted.  See Celotex, supra, 477 U.S. at 323.  In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment should be granted.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968));

see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The nonmoving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. Rule 56(e); Coleman v.Smith, 828 F.2d 714, 717 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 249-50; Baldwin County v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 252).

## II. CAPITAL ONE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FCRA CLAIM.

Plaintiff's FCRA claim is based on an alleged violation of 15 U.S.C. § 1681s-2(b). Second Amended Complaint, ¶¶ 212-222.[1] In order to maintain a claim under § 1681s-2(b), Plaintiff must show that he disputed Capital One's credit reporting regarding his account to a credit reporting agency ("CRA"), that the CRA provided notice of the dispute to Capital One, and that Capital One failed to conduct a reasonable investigation into the dispute. Stroud v. Bank of America, 886 F.Supp.2d 1308, 1312-13 (S.D.Fla. 2012), citing 15 U.S.C. § 1681s-2(b).

---

[1] Although Count XXXVII also refers to § 1681s-2(a), the Court has already ruled that statute explicitly bars private suits for alleged violations of this provision. (Doc. 44, p. 11, n.5).

The burden of showing that Capital One's investigation was unreasonable is on Plaintiff. Stroud, supra, 886 F.Supp.2d at 13.  Further, regardless of what investigation was performed, the Plaintiff must prove that the credit reporting at issue was *actually inaccurate*.  Id., citing Chiang v. Verizon New England, 595 F.3d 26, 37 (1st Cir. 2010) (holding that plaintiff suing under § 1681s-2(b) must show that that the credit reporting at issue was inaccurate because there must be "some causal relationship between" the allegedly unreasonable investigation and "the failure to discovery inaccuracies" in the plaintiff's account); see also Collins v. BAC Home Loans, 912 F.Supp.2d 997, 1011-1012 (D.Colo. 2012) (granting summary judgment on FCRA claim under § 1681s-2(b) because Plaintiff failed to show that the information the defendant furnished to the CRAs was inaccurate); Alcala v. Popular Auto, 828 F.Supp.2d 437, 440 (D.P.R. 2011) (granting summary judgment on § 1681s-2(b) claim because plaintiff failed to show that information provided by the defendant to the CRAs was inaccurate).

Moreover, the Plaintiff must show a *factual* inaccuracy in Capital One's credit reporting. The existence of disputed legal questions regarding the status of an account is insufficient. Chiang, supra, 595 F.3d at 38 (furnishers of credit information are not obligated to resolve matters that turn on questions that can only be resolved by a court of law when conducting an investigation under § 1681s-2(b)).

In the instant case, Plaintiff's claim fails because he cannot show that Capital One's reporting about his mortgage loan account was inaccurate.  Plaintiff alleges in his complaint that Capital One incorrectly reported to the credit reporting agencies that Plaintiff was late in making the monthly payments on his Loan.  Second Amended Complaint, ¶¶ 16; 215   In his deposition testimony, however, Plaintiff admitted that that he failed to pay Capital One the full monthly

payment of $4,159 beginning in January, 2011. Instead, he paid only $3,212, which was the amount of interest due on the Loan each month:

> Q. Exhibit 31, Mr. Davidson, this is a copy of the Escrow Disclosure Statement and Notice of Payment Change dated December 28, 2010, this one came from your files, if you'll notice there's a "P" at the bottom.
>
> THE WITNESS:  Uh-huh.
>
> Q. Do you see that?
>
> A. Yeah.
>
> Q. And this is advising you that your total payment -- your new total payment was 4,159; is that right?
>
> A. Right.
>
> Q. Did you pay that amount on or about the date it was due?
> A. I paid the 3,200 roughly that was due.

<u>Exhibit 1</u>, pp. 80-81.

Rather than pay the amount due according to the statements, Plaintiff crossed out that amount and wrote in the amount of $3,212 on the statement and sent in a check in that amount:

> Q. Exhibit 32 this is another mortgage statement, this was one is dated January 18th of 2011, correct?
>
> THE WITNESS:  Correct.
>
> Q. And this came from your files, correct?
>
> A. Yeah.
>
> Q. And there's a handwritten note on there that says, "In the payment" -- loan summary box there is a handwritten note that says "Payment" and then there is a line through the 4,159 and somebody wrote in 3,212.51; is that right?
>
> A. Correct.
>
> Q. Was that you who wrote that in there?

> A.  Correct.
>
> Q.  And so when you received this statement rather than paying the 4,159.67 instead you paid the 3,212.51; is that right?
>
> A.  That's correct.

Exhibit 1, pp. 81-82.  Plaintiff did the same for several months through August, 2011.  Exhibit 1, pp. 80-82; 86-87; 93-103; Exhibit 13.

The mortgage statements sent to Plaintiff clearly stated that Plaintiff was not paying the full amount he owed on the Loan.  Id.  Nevertheless, Plaintiff refused to pay the $4,159 monthly payment, taking the position that Capital One had no right to establish an escrow account to charge him for the amounts Capital One advanced to pay for lender-placed insurance.  At his deposition, Plaintiff testified that he was only required to pay interest and principal on the Loan, and that Capital One had no right to establish an escrow account to recover the funds it had advanced to pay for lender-placed insurance:

> A.  I'm required under the mortgage as read to pay principal and interest, interest and principal in that priority and there's no requirements to have any escrow account.
>
> Q.  Okay.  Do you believe that Capital One had the right if you do not -- if you didn't have an escrow account to establish an escrow account to provide for reimbursement of the amounts paid for the insurance?
>
> A.  No.
>
> Q.  All right.  So it's your position that under the mortgage Capital One was not entitled to establish an escrow account to obtain reimbursement from you for the amounts it paid for insurance on your property; is that correct?
>
> A.  Correct.
>
> Q.  How was Capital One to be reimbursed for the insurance if it was not going to be through an escrow account?

> A.  I would write them a check.
>
> Q.  Did you ever offer to do that?
>
> A.  Many, many times and just met with frustration and no clear answers as to what was going on.
>
> Q.  Did you offer to pay the full amount for the lender-placed insurance that was charged to your account?
>
> A.  No.

<u>Exhibit 1</u>, pp. 44-45.

Plaintiff's interpretation of the Loan documents is plainly wrong.  Pursuant to the plain terms of his Mortgage, Plaintiff was obligated to pay Capital One the cost of the lender-placed insurance:

> **5.  Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire . . . and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.
>
> * * *
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverable, at Lender's option and Borrower's expense.  * * *  Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  *Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.*

<u>Exhibit 2</u>, § 5 (emphasis added).  Further, the Mortgage also provides that Borrower is required to make periodic escrow payments for any sums due for lender-placed hazard insurance:

> **3.  Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  *

>   \* \* (c) *premiums for any and all insurance required by the Lender under Section 5.*

Exhibit 2, § 3 (emphasis added).

Although Plaintiff's Loan was originally set up without an escrow account, Plaintiff signed a Waiver of Escrow in which he agreed that the lender had the right to establish an escrow account in the event that the lender advanced funds to pay for insurance:

>   The undersigned applicant(s) agree(s) to be solely responsible for the timely payment of any and all property taxes, assessments, leasehold payments, ground rents, and hazard or property insurance premiums (including flood insurance premiums. If applicable), collectively referred to as the "Escrow Items," affecting the above referenced property.  Further, the applicant(s) agree(s) to provide the Lender with written evidence of the payment of such items within two (2) weeks following your receipt of a written request from Lender.
>
>   1.   Applicant(s) fail(s) to pay any of the Escrow Items in a prompt and timely manner;
>
>   2.   Applicant(s) fail(s) to provide Lender with evidence of payment of the escrow Items within two (2) weeks following your receipt of a written request from Lender;
>
>   3.   Applicant(s) is(are) otherwise in default under the terms of your mortgage loan documents; or
>
>   4.   *It becomes necessary for Lender to advance funds to pay all or any portion of the Escrow Items*.

Exhibit 4 (emphasis added).

Plaintiff's contention that Capital One did not have the right to establish an escrow account to obtain reimbursement for the lender-placed insurance is directly contradicted by the Loan documents he signed.[2]

---

[2]   Plaintiff also apparently believed that he was not obligated to pay for the lender-placed insurance until Capital One provided him with a copy of an invoice on the letterhead of the insurance underwriter.  Exhibit 1, pp. 53-56.  However, there is nothing in the Mortgage or
(continued...)

Moreover, the fact that Plaintiff may have believed that Capital One was not authorized to increase his monthly payments to recover the $11,365 it paid for insurance does not mean that Capital One's credit reporting was inaccurate.  The First Circuit in Chiang, supra, held that an FCRA plaintiff needs to show more than the mere presence of disputed legal questions regarding the status of an account in order to prove that credit reporting was factually inaccurate.  Chiang, supra, 595 F.3d at 38.  In that case, the plaintiff had disagreements with Verizon over charges on his cell phone bill.  595 F.3d at 31.  When Verizon refused to remove the disputed charges, plaintiff simply refused to pay the disputed bills.  Id.  When Verizon adversely reported that plaintiff's account was delinquent, plaintiff filed disputes with the credit reporting agencies.  Id. at 32.  Verizon refused to change its credit reporting, and Chiang sued under § 1681s-2(b).  The First Circuit affirmed summary judgment in favor of Verizon because plaintiff admitted that he refused to pay his bills and therefore failed to demonstrate any factual inaccuracy in Verizon's reporting:

> Chiang's affidavit and letters show that he had several disagreements with Verizon NE over his billing, which extended into state court litigation; Verizon NE does not dispute this.  Chiang has not, however, demonstrated that any of his substantive disputes with Verizon NE involved actual, factual inaccuracies in his billing that a reasonable investigation could have detected.  To the extent that his argument reduces to the claim that any investigation that did not accept his allegations as accurate was by definition unreasonable, it fails.  For this reason, too, summary judgment was appropriate on Chiang's FCRA claim.

595 F.3d at 41.

Similarly, in Collins, supra, the court ruled that a plaintiff's disagreement with the way his mortgage loan account has been handled did not make the creditor's adverse credit reporting

---

(...continued)
other Loan documents that makes Plaintiff's obligation to reimburse Capital One for insurance contingent on Capital One providing him a copy of such an invoice.  Exhibit 2.

about the account inaccurate when it was undisputed that the plaintiff failed to make the required payments:

> Plaintiff does not now, and did not then, offer any support that would absolve him of his liability on the underlying 2005 Loans. Plaintiff claims he "is not in agreement with the foreclosure no matter how you slice it." (Resp. at 6.) However, his disagreement with *how* the foreclosure came about, or how Countrywide handled the process regarding his modification request, does not transform the original debt into one that is "disputed." ***For credit reporting purposes, such a disagreement does not alter the underlying fact that Plaintiff incurred the original debt, did not make payments as required, his own failure to make promised timely payments caused foreclosure against the securing property, leaving no remaining debt balance, all as accurately reported to the CRAs.*** . . . Accordingly, Plaintiff cannot and has not shown that the information Defendant furnished to the CRAs was factually inaccurate. See Chiang, 595 F.3d at 38 (holding that a plaintiff must show that the disputed information is inaccurate under section 1681s-2(b))

912 F.Supp.2d at 1012.

In the instant case, it is undisputed that Capital One established an escrow account after it advanced funds to pay for lender-placed insurance. Exhibit 1, pp. 79-82; Exhibit 3, ¶ 17; Exhibit 12. It is further undisputed that Capital One assessed a charge against the escrow account for lender-placed insurance in 2010, which increased Plaintiff's monthly mortgage payment to $4,156. Exhibit 1, pp. 79-82; Exhibit 3, ¶ 17; Exhibit 12. It undisputed that Plaintiff refused to pay the $4,159 per month beginning in January 2011, instead paying only $3,212, which was the amount of interest due. Exhibit 1, pp. 79-82; 86-87; 93-1-1; Exhibit 13. It is undisputed that Plaintiff did not bring his loan current until May, 2012. Exhibit 1, pp.114-116; Exhibit 20.

Based on these undisputed facts, Plaintiff cannot show that Capital One's credit reporting that Plaintiff failed to timely make the required payments on his Loan was inaccurate. Accordingly, his claim under 15 U.S.C. § 1681s-2(b) fails as a matter of law. Stroud, supra, 886 F.Supp.2d at 1315-16; (holding that defendant was entitled to judgment as a matter of law on

FCRA claim where it was undisputed that the negative reporting was accurate); see also Chiang, supra, 595 F.3d at 37 (affirming summary judgment on § 1681s-2(b) claim because plaintiff failed to show that information provided by the defendant to the CRAs was inaccurate); Collins, supra, 912 F.Supp.2d at 1011-1012 (granting summary judgment on FCRA claim under § 1681s-2(b) because Plaintiff failed to show that the information the defendant furnished to the CRAs was inaccurate); Alcala, supra, 828 F.Supp.2d at 440 (same).

Nothing in the terms of the Mortgage granted Plaintiff the right to refuse to pay Capital One for lender-placed insurance simply because he incorrectly believed that Capital One lacked the authority to establish an escrow account to recover the monies it advanced to purchase insurance. Nor does the Mortgage give Plaintiff the right to refuse to pay for the insurance because he believed the premiums were too expensive, or because he believed he was entitled to documents from the underwriter justifying the amount of the premium. Plaintiff *admits* that he failed to pay the amounts due for lender-placed insurance which were indisputably due to Capital One. Therefore, Capital One's credit reporting was accurate and Plaintiff's FCRA fails as a matter of law.

Finally, Plaintiff has no evidence that Capital One's investigation into the credit reporting dispute he filed with the CRAs was unreasonable. He admitted in his deposition that he does not know what Capital One did to investigate his dispute. Exhibit 1, pp. 160-61. Therefore, Plaintiff cannot meet his burden of proving it was unreasonable. Stroud, supra, 886 F.Supp.2d at 13. Further, Plaintiff cannot dispute the report of Capital One's expert, John Ulzheimer, that Capital One's investigation was reasonable. See Expert Report of John Ulzheimer, attached hereto as Exhibit 26.

## CONCLUSION

For all of the foregoing reasons, Capital One's Motion for Summary Judgment should be granted.

Respectfully submitted,

By: s/ Felix J. Lopez
Felix J. Lopez, Esq.
DiBello & Lopez, P.A.
1550 Madruga Avenue, Suite 504
Coral Gables, Florida 33146
Telephone: (305) 668-8870
Fax: (305) 668-8892
email: flopez@dlclegal.com

and

Robert A. Scott
Ballard Spahr LLP
300 E. Lombard Street, 18th Floor
Baltimore, Maryland 21202
410-528-5600
(admitted *pro hac vice*)

*Attorneys for Defendant Capital One*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on October 24, 2014 on all counsel or parties of record on the Service List below.

By: s/ Felix J. Lopez
Felix J. Lopez, Esq.

## SERVICE LIST

**William M. Tuttle, II, Esq.**
William M. Tuttle, II, P.A.
700 South Dixie Highway, Suite #200
Coral Gables, Florida  33146
Telephone: (305) 375-8181
Facsimile:  (305) 375-8186
*Attorneys for Plaintiff James Davidson*

**Felix J. Lopez, Esq.**
DiBello & Lopez, P.A.
1550 Madruga Avenue, Suite 504
Coral Gables, Florida 33146
Telephone: (305) 668-8870
Fax: (305) 668-8892
E-mail: flopez@dlclegal.com

		-and-

**Robert A. Scott, Esq.** *(Pro Hac Vice)*
Ballard Spahr LLP
300 East Lombard Street
18th Floor
Baltimore, MD 21202
Telephone: (410) 528-5527
email: scottr@ballardspahr.com

*Attorneys for Defendant Capital One*