UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20478-CIV-ALTONAGA/O'Sullivan

**JAMES W. DAVIDSON**,

    Plaintiff,
vs.

**CAPITAL ONE, N.A.**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Capital One, N.A.'s ("Capital One['s]") Motion for Summary Judgment . . . ("Capital One Motion") [ECF No. 67]; and Plaintiff, James W. Davidson's ("Davidson['s]") Motion for Partial Summary Final Judgment of Liability . . . ("Davidson Motion") [ECF No. 73], both filed October 24, 2014. Davidson submitted a Response . . . ("Davidson Response") [ECF No. 82] to the Capital One Motion on November 10, 2014; and a Reply . . . ("Davidson Reply") [ECF No. 86] in support of the Davidson Motion on November 19, 2014. Capital One filed its Opposition to Plaintiff's Motion . . . ("Capital One Response") [ECF No. 79] on November 10, 2014; and its Reply . . . ("Capital One Reply") [ECF No. 84] in support of the Capital One Motion on November 19, 2014.[1] The Court has carefully considered the parties' written submissions and applicable law.

---

[1] The parties each submitted a statement of undisputed material facts ("SMF"), and responses to the SMFs. (*See* Capital One Mot. 2–8 ("Capital One SMF"); Material Facts . . . ("Davidson SMF Resp.") [ECF No. 82-1]; Davidson Mot. 3–12 ("Davidson SMF"); Capital One Resp. 2–7 ("Capital One SMF Resp.")). The Davidson SMF Response only identifies certain paragraphs of the Capital One SMF as disputed; the Court deems the remaining paragraphs admitted, as they are supported by evidence in the record. *See* S.D. FLA. L.R. 56.1(b).

# I. BACKGROUND

### A. Procedural Background

In December 2013, Davidson filed a Complaint ("Complaint") [ECF No. 1-2] in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida; the case was removed by Capital One. (*See* [ECF No. 1]). Davidson filed his Second Amended Complaint ("SAC") [ECF No. 32] on April 18, 2014. By Order entered July 31, 2014, the Court dismissed all but one count of the SAC: that premised on a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681s-2(b) (Count XXXVII). (*See* Order [ECF No. 44]).

### B. Factual Summary

This matter arises out of a mortgage loan Davidson received in 2003. (*See* Capital One SMF ¶ 1). In 2010, Capital One claimed Davidson was failing to maintain wind storm insurance coverage he was required to maintain under the terms of the Mortgage ("Mortgage") [ECF No. 68-2]. (*See id.* ¶¶ 4, 11). After warning Davidson about this failure, Capital One bought insurance (the "Insurance Policy") on his behalf. (*See id.* ¶¶ 12–13). It established an escrow account to recover the premiums it had paid on his behalf. (*See id.* ¶ 14). Davidson had chosen not to establish an escrow account when he received the loan, instead signing a Waiver of Escrow ("Waiver") [ECF No. 68-5]. (*See id.* ¶ 8).

Davidson eventually submitted proof he had purchased the required insurance. (*See id.* ¶ 18). After receiving a partial refund of the Insurance Policy it had purchased on his behalf, Capital One charged Davidson about $11,365 for approximately three months of insurance payments, although Davidson says he did not understand the calculation of this amount until 2012. (*See id.* ¶¶ 19–20; Davidson SMF Resp. ¶¶ 19–20). Davidson does not dispute he "owed Capital One a total of $11,365 for three months of wind coverage Capital One had purchased"

(Capital One SMF ¶ 20 (citation omitted); *see also* Davidson SMF Resp. ¶ 20); he states he was "unable to understand, reconcile, or appropriately react to the many confusing mortgage loan statements, escrow statements, and letters received from Capital One, from about July 2010 to January 2012" and thus did not understand the amount he owed during that time frame. (Davidson SMF Resp. ¶ 20).

On December 28, 2010, Capital One sent a letter to Davidson increasing his monthly payment to $4,159 in order to reimburse itself for the Insurance Policy; Davidson says he did not understand why his monthly payment was increased, in part because the letter did not mention insurance or previous correspondence from Capital One indicating a higher monthly payment was due. (*See id.* ¶ 21; Capital One SMF ¶ 21). Capital One continued to send monthly bills for $4,159, and Davidson submitted payments of $3,212 each month. (*See* Capital One SMF ¶¶ 22–23; Davidson SMF Resp. ¶¶ 22–23). Davidson says he never refused to pay for the Insurance Policy, but Capital One failed to provide him with an accounting and explanation of the total premium paid for the Insurance Policy. (*See* Davidson SMF Resp. ¶ 23). He also disputes Capital One's ability to establish an escrow account and increase his monthly payment to reimburse itself for the Insurance Policy. (*See id.*).

Capital One reported Davidson as delinquent to credit reporting agencies ("CRAs"), and Davidson complained to Capital One these reports were erroneous. (*See* Capital One SMF ¶ 30; Davidson SMF Resp. ¶ 30). Capital One did not change its reporting because it says the delinquency was accurately reported to the CRAs (*see* Capital One SMF ¶ 31); Davidson says his account was not delinquent because he "timely paid or tendered payment to Capital One of all lawful monthly payments due under" the Mortgage, namely $3,212 a month. (Davidson SMF Resp. ¶ 34).

## II. LEGAL STANDARD

Summary judgment shall be rendered if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P 56(a). A party asserting a fact cannot be genuinely disputed must cite to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," or show "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1) (alteration added). The Court need only consider cited materials from the record. *See* FED. R. CIV. P. 56(c)(3). In making its assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." FED. R. CIV. P. 56(e) (alterations added). Indeed, the "non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant." *Riebsame v. Prince*, 267 F. Supp. 2d 1225, 1231 (M.D. Fla. 2003) (citations omitted).

"An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (citation and internal quotation marks omitted)). "A factual dispute is

genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find" for the nonmoving party. *Anderson*, 477 U.S. at 254 (alteration added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Capital One asserts Davidson's FCRA claim fails because he defaulted on his required payments, and thus Capital One's reports to the CRAs about his mortgage loan account were correct. (*See* Capital One Mot. 10). Capital One also argues Davidson's belief it could not increase his monthly payments to recoup the amount it had paid for the Insurance Policy is immaterial in an FCRA action because "the mere presence of disputed legal questions regarding the status of an account" does not "prove that credit reporting was factually inaccurate." (*Id.* 15 (citation omitted)).[2] For his part, Davidson asserts he did not know the reason for the increase in his monthly payment and he properly tendered payments of $3,212 a month, the amount he says he was required to remit to Capital One for the interest-only loan. (*See generally* Davidson Resp.).[3]

---

[2] Capital One also seeks summary judgment in its favor on the basis of Davidson's failure to identify a triable issue as to the reasonableness of its investigation (*see generally* Capital One Mot.), but given the conclusion reached in this Order, the Court does not reach Capital One's alternative ground.

[3] Davidson also requests the Court strike the declaration of a Capital One expert witness, John

Pursuant to the FCRA, after a CRA notifies a furnisher of credit information such as Capital One a customer has disputed an item on his or her credit report, the furnisher must

> "conduct an investigation with respect to the disputed information[]" and "review all relevant information provided" to it by the CRA. 15 U.S.C. § 1681s-2(b)(1). Regardless of the results of its investigation, the Bank must report back to any CRA that notified it of the dispute. 15 U.S.C. § 1681s-2(b)(1)(C). . . . Finally, if the investigation is either inconclusive or results in a finding that the Bank provided incomplete or inaccurate information to the CRA, then the Bank [must], "for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the investigation promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information." 15 U.S.C. § 1681s-2(b)(1)(E).

*Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1257 (S.D. Fla. 2009) (alterations added). "A furnisher of information is entitled to summary judgment if it conducts a reasonable investigation based upon the information regarding the dispute provided by the credit reporting agency, concludes that there is no evidence its information is inaccurate, and accurately reports its findings to the credit reporting agencies." *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1313 (S.D. Fla. 2012) (citation omitted).

Capital One argues an FCRA plaintiff must establish the underlying information reported to the CRA is incorrect. (*See* Capital One Mot. 10). The Davidson Response does not seriously contest this point (*see generally* Davidson Resp),[4] although certain portions could be read as arguing summary judgment can be avoided on the issue of the reasonableness of Capital One's investigation alone. (*See, e.g., id.* 20 (arguing summary judgment is improper in part because "a

---

Ulzheimer. (*See* Davidson Resp. 16–19). As the declaration is cited solely in support of Capital One's argument concerning the reasonableness of its investigation (*see* Capital One Mot. 17), the Court does not rely on the declaration and accordingly denies Davidson's request as moot.

[4] As Capital One notes, the Davidson Response "does not take issue with the cases cited in Capital One's Motion holding that a plaintiff asserting a claim under 15 U.S.C. [section] 1681s-2(b) . . . must prove that the defendant's credit reporting was inaccurate." (Capital One Reply 2 (alterations added; citations omitted)).

trier of fact could conclude . . . that the investigation conducted by Capital One . . . was something less than 'reasonable'" (alterations added))).

Construed literally, the text of the FCRA would seem to impose liability — regardless of the accuracy of the underlying information — if the furnisher did not conduct a proper investigation after receiving notice of a dispute. *See* 15 U.S.C. § 1681s-2(b)(1) (requiring a furnisher to "conduct an investigation with respect to the disputed information"); *id.* § 1681o (establishing civil liability for negligence "in failing to comply with any requirement imposed under this subchapter with respect to any consumer"). But to interpret the FCRA to create liability for the failure to conduct a reasonable investigation when the disputed information is accurate would do violence to the primary goal of the FCRA: to promote the accurate reporting of credit information to CRAs. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37–38 (1st Cir. 2010) ("The FCRA is intended to protect consumers against the compilation and dissemination of *inaccurate* credit information." (emphasis in original; citation and internal quotation marks omitted)); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (noting Congress "creat[ed] a system intended to give consumers a means to dispute — and, ultimately, correct — inaccurate information on their credit reports" (alteration added; citations omitted)). As legislation should not be interpreted in a way "actually inconsistent with the policies underlying the statute," *Bailey v. USX Corp.*, 850 F.2d 1506, 1509 (11th Cir. 1988), courts appear to agree an FCRA plaintiff must prove the challenged information is inaccurate. *See, e.g., Chiang*, 595 F.3d at 38 (requiring "a showing of actual inaccuracy in suits against furnishers").[5]

---

[5] The opposite result would be absurd: construing the FCRA to impose liability if a furnisher fails to conduct a reasonable investigation when the credit information it reported is correct would create an

Davidson disputes Capital One's conclusion the reports to CRAs were correct (*see generally* Davidson Resp.), but as noted in section I.B, *supra*, Davidson does not dispute he "owed Capital One a total of $11,365 for three months of wind coverage Capital One had purchased." (Capital One SMF ¶ 20; *see also* Davidson SMF Resp. ¶ 20). Instead, Davidson relies on a number of creative but ultimately unpersuasive arguments for the proposition Capital One's credit reporting was inaccurate.

To begin, Davidson argues the Waiver — on which Capital One relies for its establishment of the escrow and increase in Davidson's payments — is unenforceable. (*See* Davidson Resp. 5). He points out he owned the property jointly with his wife, who signed the Mortgage but not the Waiver; however, he provides no support for the proposition her failure to sign the Waiver makes it ineffective. Indeed, the Adjustable Rate Note ("Note") [ECF No. 84-1] — the effectiveness of which is not in dispute — was only signed by Davidson, not his wife. Further, the Mortgage allows modifications to the terms of the loan documents without the consent of Davidson's wife, who was a co-signer pursuant to its terms. (*See* Mortgage 11).[6]

Davidson next asserts the Waiver does not permit Capital One to establish an escrow "because all escrow was waived for the life of the loan upon payment of $1,800.00 by Plaintiff at the 2003 loan closing." (Davidson Resp. 5). This argument is belied by the text of the Waiver:

---

incentive for nuisance suits by litigious plaintiffs who suffered no harm from the furnishers' reports to CRAs. As noted in *Chiang*, "it is difficult to see how a plaintiff could prevail on a claim for damages based on an unreasonable investigation of disputed data without a showing that the disputed information was, in fact, inaccurate." 595 F.3d at 38 (alteration, citation, and internal quotation marks omitted).

[6] The Mortgage states, "any Borrower who co-signs this Security Instrument but does not execute the Note . . . is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property" and "agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent." (Mortgage 11 (alterations added)).

"Lender shall have the right to establish or reestablish an escrow account . . . in the event that . . . [i]t becomes necessary for Lender to advance funds to pay all or any portion of the Escrow Items." (Waiver 1 (alterations added)). "Escrow Items" include the cost of insurance against any hazards for which Capital One required insurance. (*See* Mortgage 5–6).

Davidson alternatively argues that if enforceable, the Waiver only contemplates establishment of an escrow "in the conventional sense," which he defines with the aid of Black's Law Dictionary and Wikipedia to mean "an escrow to collect in advance for the later 'payment of the escrow items' as those expenses came due in the future, not as a vehicle to recover past expenses." (Davidson Resp. 5; *see also id.* 12). Yet the clear language of the Mortgage and Waiver contemplates *precisely* what Capital One did in this matter. (*See* Mortgage 5 ("If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to . . . , Lender may exercise its rights . . . and pay such amount and Borrower shall then be obligated . . . to repay to Lender any such amount." (alterations added)); *see also* Waiver 1 (noting an escrow account can be established if it is "necessary for Lender to advance funds to pay all or any portion of the Escrow Items")). The "parties selected the language of the contract. Finding it to be clear and unambiguous, [the Court has] no right . . . to give it a meaning other than that expressed in it. To hold otherwise would be to do violence to the most fundamental principle of contracts." *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1004 (Fla. 2d DCA 1995) (alterations added; citation and internal quotation marks omitted). Accordingly, the Court rejects Davidson's restrictive interpretation of "escrow."

Davidson also appears to believe Capital One's "inexplicable and unexplained" increases in his monthly payments excuse his decision not to pay what he had been billed, making Capital

9

One's reporting inaccurate. (Davidson Resp. 7; *see also id.* 8–12).[7] Yet the Davidson Response does not cite any authority or any terms of the Mortgage, Note, or Waiver (1) making payment of Davidson's bill contingent on explanation by Capital One or (2) entitling him to certain information as to the cost of the Insurance Policy or the resulting increase in monthly payments. (*See generally id.*). Even if Davidson did not understand what had occurred despite the clear terms of the Mortgage, Note, and Waiver, this shortcoming does not make Capital One's reports to the CRAs incomplete or inaccurate. As *Chiang* notes, the mere fact a borrower disputes the amount he has been billed does not mean a creditor's report of delinquency is incorrect. 595 F.3d at 38 ("[A] plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions . . . . Like CRAs, furnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." (emphasis in original; alterations added; brackets, citations and internal quotation marks omitted)).

Davidson also challenges Capital One's division of payments for the escrow and Insurance Policy into monthly payments due immediately — instead of, presumably, adding these costs to the total underlying mortgage debt. (*See* Davidson Resp. 10). Davidson asserts the Mortgage does not sanction this procedure; however, he points to no portion of the Mortgage forbidding it. (*See generally id.*). In fact, the Mortgage's "Funds for Escrow Items" provision permits Capital One to "collect and hold Funds in an amount . . . not to exceed the maximum amount a lender can require under [the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*]." (Mortgage 5 (alterations added)). Pursuant to the RESPA, "in the event

---

[7] Davidson addresses conflicting amounts contained in escrow statements and monthly bills from different dates (*see* Davidson Resp. 7–12), but points to no authority a creditor's change in billing statements — in this case, a drop in the amount of a bill from $11,182 a month to $4,159 a month — has any bearing on the accuracy of reports to CRAs that a debtor has failed to pay his then-current bill. (*See generally id.*).

the lender determines there will be or is a deficiency he shall not be prohibited from requiring additional monthly deposits in such escrow account to avoid or eliminate such deficiency." 12 U.S.C. § 2609(a)(2). As the terms of the Mortgage permit Capital One, pursuant to the RESPA, to require additional monthly deposits to eliminate the deficiency in the escrow account it had established for Davidson, Capital One's billing practices in this case were proper.[8]

Relying on the undisputed facts, the Court determines Capital One correctly reported the delinquent status of Davidson's account to the CRAs. As such, Capital One has shown there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. *See* FED. R. CIV. P 56(a). As Capital One has established its credit reporting in this matter was correct, Davidson obviously cannot prevail in his motion seeking partial summary judgment. (*See* Davidson Mot. 19 ("If Capital One had conducted a truly 'reasonable' credit investigation . . ., it would have certainly discovered its credit reporting was incorrect . . . ." (alterations added))).

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. The Capital One Motion **[ECF No. 67]** is **GRANTED**.

2. The Davidson Motion **[ECF No. 73]** is **DENIED**.

3. Final Judgment for Defendant, Capital One, N.A. will be entered by separate order. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED as moot**.

---

[8] Davidson makes much of the fact Capital One may have improperly applied payments to repay itself for the Insurance Policy before applying them to interest he owed. (*See* Davidson Resp. 10–11). This merely muddies the water; Capital One reported Davidson delinquent on the monthly payments due, for which the Court has determined Capital One properly billed him. Davidson's complaints regarding the proper application of these payments to his debt are not the proper subject of an FCRA action.

CASE NO. 14-20478-CIV-ALTONAGA/O'Sullivan

**DONE AND ORDERED** in Miami, Florida, this 25th day of November, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record